UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THEODORE F. JOHNSON,

                Plaintiff,

    - against -

DEBRA A. JAMES, a/k/a JUDGE DEBRA A. JAMES,
NATALIA SWAN, a/k/a NATALIA WOLAN,
ALTERMAN and BOOP, LLP, WILLIAM SCHAAP,
ESQ., ROBERT S. SIKORSKI, FIDELITY NATIONAL
TITLE INSURANCE COMPANY, YOLANDA CHANG,
Broker, GWERERVA "DARLING" CHERRY, AND
H.P.D. NEW YORK CITY DEPARTMENT OF
FINANCE, et al.,

                Defendants.

08 CV 00032 (PAC)

**NOTICE OF MOTION**

    **PLEASE TAKE NOTICE,** that upon this notice of motion, the affidavit of James E.

Schwartz dated March 27, 2008, and the exhibits annexed thereto, together with the accompanying

memorandum of law, and all the pleadings and proceedings heretofore had herein, defendant Fidelity

National Title Insurance Company ("Fidelity"), by its undersigned counsel, will move before the

Honorable Paul A. Crotty, United States District Court Judge, on a date to be determined by this

Court for oral argument, should the Court deem it necessary, at the United States Courthouse, located

at 500 Pearl Street, New York, New York 10007-1581, for an order pursuant to Rule 12(b)(6) and

8(a) and 9(b) of the Federal Rules of Civil Procedure dismissing the complaint in this action against

Fidelity on the grounds that the complaint fails to state a claim for which relief can be granted, and

granting such other and further relief as may be just and proper.

**STEMPEL BENNETT CLAMAN & HOCHBERG, P.C.**

By: _____

      **JAMES E. SCHWARTZ (9608)**
Attorneys for Defendant Fidelity National Title
      Insurance Company
675 Third Avenue
New York, New York 10017
(212) 681-6500
(212) 681-4041 (fax)


To:    Mr. Theodore F. Johnson
      Plaintiff, Pro Se
      205 Brown Avenue
      Hempstead, New York 11550

      Robert S. Sikorski, Esq.
      Defendant, Pro Se
      Busson & Sikorski
      381 Park Avenue South, Suite 615
      New York, New York 10016-8806
      (212) 532-7184

      Anastasios P. Tonorezos, Esq.
      Wilson, Elser, Moskowitz, Edelman & Dicker LLP
      Attorneys for Defendant Alterman & Boop, LLP
      150 East 42nd Street
      New York, New York 10017-5693
      (212) 490-3038

      Olga Minkina, Esq.
      Assistant Corporation Counsel
      Corporation Counsel of the City of New York
      Attorneys for New York City Department of Housing
        Preservation and Development and New York City
        Department of Finance
      100 Church Street, Room 5-201
      New York, New York 10007
      (212) 788-1689
      (212) 788-0937 (fax)

Anthony J. Tomari, Esq.
Assistant Attorney General
Attorney for Debra A. James a/k/a Judge Debra A. James
120 Broadway
New York, New York 10271
(212) 416-8553

Natalia Swan a/k/a Natalia Wolan
c/o William Schaap, Esq.
143 West 4th Street
New York, New York 10012

William Schaap, Esq.
143 West 4th Street
New York, New York 10012

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

THEODORE F. JOHNSON,

<div style="margin-left:2em">Plaintiff,</div>

- against -

DEBRA A. JAMES, a/k/a JUDGE DEBRA A. JAMES,
NATALIA SWAN, a/k/a NATALIA WOLAN,
ALTERMAN and BOOP, LLP, WILLIAM SCHAAP,
ESQ., ROBERT S. SIKORSKI, FIDELITY NATIONAL
TITLE INSURANCE COMPANY, YOLANDA CHANG,
Broker, GWENERVA "DARLING" CHERRY, AND
H.P.D. NEW YORK CITY DEPARTMENT OF
FINANCE, et al.,

<div style="margin-left:6em">Defendants.</div>

**Civil Action No:**
**08 CV 00032 (PAC)**

**AFFIDAVIT OF**
**JAMES E. SCHWARTZ**

**STATE OF NEW YORK**          )
                                     ) ss.:
**COUNTY OF NEW YORK**        )

**JAMES E. SCHWARTZ**, being duly sworn, states:

1.    I am a member of the law firm Stempel Bennett Claman & Hochberg, P.C., attorneys for defendant Fidelity National Title Insurance Company ("Fidelity"), and am fully familiar with the facts set forth herein. I am also a member in good standing of the bar of the State of New York and of this Court.

2.    I submit this affidavit in support of Fidelity's motion to dismiss the claims asserted against it in the complaint, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6), 8(a) and 9(b).

3.     The Court should grant the motion because in an underlying action in New York State Supreme Court, captioned Swan v. Johnson (Sup. Ct., N.Y. Co., Index No. 106400/05) (the "State Court Action"), the court, by order dated January 4, 2006 ("Order #1), granted specific performance to Natalia Swan (a/k/a Natalia Wolan) compelling Mr. Johnson to convey to her his real property located at 121 West 118th Street, New York, New York (the "Property"), pursuant to a contract of purchase and sale that they had signed on July 25, 2002 (the "Contract") (a copy of Order #1is annexed hereto as Exhibit A). (Ms. Swan is also a defendant here).

4.     When Mr. Johnson later disobeyed Order #1, the court, by order dated December 14, 2006 ("Order #2"), appointed a receiver for the Property, and directed the receiver, acting for Mr. Johnson, to convey the Property to Ms. Swan (a copy of Order #2 is annexed hereto as Exhibit B).

5.     Fidelity was Ms. Swan's title insurer. As such, it owed no duty to Mr. Johnson. In any event, pursuant to Orders #1 and #2, neither Ms. Swan nor Fidelity can, as a matter of law, have caused any legally cognizable harm to Mr. Johnson by, respectively, purchasing the Property, and insuring the purchaser's title. Indeed, Orders #1 and #2 blessed the Contract's legitimacy, and fully warranted Ms. Swan's taking, and Fidelity's insuring, title.

6.     Under Fed. R. Civ. P. 12(d), should the Court deem our reliance on Orders #1 and #2 – the basis for dismissal – as outside the scope of the Mr. Johnson's complaint, we invite the Court to treat the motion as one for summary judgment under Fed. R. Civ. P. 56.

## FACTS

7.     Mr. Johnson commenced this action via summons and complaint dated January 3, 2008 (the "Complaint") to essentially re-litigate claims that he had already litigated and lost in the State Court Action (a copy of the Complaint is annexed hereto as Exhibit C).

8.     In this Court, Mr. Johnson's claims involve Mr. Johnson's ownership, and transfer to Ms. Swan of, the Property.

9.     On or about July 25, 2002, Mr. Johnson, as seller, entered into the Contract – to sell the Property to Ms. Swan, as purchaser (a copy of the Contract is annexed hereto as Exhibit D).

10.     Ms. Swan then purchased from Fidelity a policy of title insurance in connection with her acquisition of the Property.

11.     Before the close of that sale, Mr. Johnson reneged on the Contract, forcing Ms. Swan to commence the State Court Action for specific performance.

12.     Mr. Johnson appeared in the State Court Action, by counsel, and fought Ms. Swan's suit. As noted, Order #1, entered in January 2006 before Mr. Johnson ever sued in this Court, granted specific performance to Ms. Swan compelling Mr. Johnson to convey the Property:

> ORDERED AND ADJUDGED that plaintiff's motion for summary judgment is GRANTED, and defendant Theodore Johnson shall specifically perform the contract of sale dated July 25, 2002 between himself and plaintiff Natalia Swan a/k/a Natalia Wolan, and, upon the plaintiff's performance of her obligations under the contract, including payment of the purchase price, [defendant shall] deliver the bargain and sale deed with covenants

for the subject premises and fulfill his other obligations under the contract to the plaintiff at a closing to be held no later than ninety days of the date hereof...

13.    However, pursuant to Order #2, entered in December 2006, also before Mr. Johnson ever sued here, the state court had directed Mr. Johnson, through a receiver, to convey the Property to Ms. Swan.  (See Exhibit B).  As noted, Order #2 compelled Mr. Johnson to convey the Property to Ms. Swan:

> ORDERED, that Plaintiff's [Ms. Swan's] motion be and the same is hereby granted to the extent that Robert S. Sikorski, Esq., Room 815, 381 Park Avenue South, New York, New York 10016 is appointed Receiver for the purpose of conveying in the name of Defendant [Mr. Johnson] and in his stead, the property known as 121 West 118th Street, New York, New York to Plaintiff pursuant to the contract between Plaintiff and Defendant dated July 25, 2002...

> ORDERED that said Receiver shall have the full authority in his discretion to escrow sums with the title insurance company insuring this transaction, to wit. Fidelity National Title Insurance Company to secure the release of any liens and/or to compromise such liens and/or to pay such liens in his discretion in order to insure a timely closing but with consistent with the attempt to preserve the maximum funds for Defendant's benefit...

> ORDERED that such conveyance shall occur within thirty (30) days of the date hereof or as soon thereafter as the Receiver can do so...

14.    Fidelity acted merely as the title insurance company for Ms. Swan on the sale of the Property and had no other association with, or relation to, Mr. Johnson, nor is any alleged.

15.    Orders #1 and #2 are valid and subsisting orders of the New York State Supreme Court.  They adjusted the rights and relations of Mr. Johnson and Ms. Swan regarding the Property: the Contract was valid and Mr. Johnson had to perform under it.

16.    But Mr. Johnson has now commenced this action, raising virtually the same claims as he lost in the State Court Action.  If Mr. Johnson disagreed with Orders #1 and #2, he had a remedy: an appeal.  But he never appealed, and certainly never obtained reversal of either Order.  Rather, he has now commenced this action against a laundry list of individuals and entities – with most of which he has had bare involvement.  His procedural feint is legally unsound, as the accompanying memorandum of law demonstrates.

## THE COMPLAINT

17.    Mr. Johnson's Sixth Cause of Action – his only claim against Fidelity – appears in two threadbare paragraphs of the complaint (71 and 72) neither of which, whether considered alone or together, spells out a viable cause of action:

> 71.  Fidelity National Title Insurance Company <u>knew or should have known that the property</u> at 121 West 118th Street, New York, New York 10026, Section 7, Block 1903, Lot 20, <u>is the property of plaintiff Theodore F. Johnson</u> a/k/a Ted El Inc. Real Estate Holding Corp.
>
> 72.  Plaintiff, Theodore F. Johnson bought said property from the City of New York, Department of General Services, 2 Lafayette Street, Room 1801, New York, New York 100[0]7, and not from Ralph Johnson.

(emphasis added)

18.    Fed. R. Civ. P.12(b)(6) states, among other things, that a proper basis to dismiss an action is the plaintiff's failure to state a claim upon which relief can be granted.  Here, given the skeletal allegations that Mr. Johnson has made, coupled with the Orders #1 and #2, Mr. Johnson has indeed failed to state a claim against Fidelity.

19.     Further, Fed. R. Civ. P. 8(a) and 9(b) require at least some particularity in pleading.  But Mr. Johnson has failed to plead his claims with even minimal particularity.  And he could not – because of Orders #1 and #2.

20.     Here, Mr. Johnson has not alleged a specific wrong-doing or duty on the part of Fidelity.  Rather, Mr. Johnson merely describes the facts surrounding the purchase of the Property and states that Fidelity should have known that the Property belonged to Mr. Johnson.

21.     Should have known?  Given Orders #1 and #2, which held that Mr. Johnson must convey the Property to Ms. Swan, Fidelity should have known and did know that Mr. Johnson was not the Property's rightful owner, and that Ms. Swan was.

### CONCLUSION

22.     Mr. Johnson has failed to state a claim upon which relief may be granted.

23.     Accordingly, pursuant to Rules 12(b)(6), 9(b) and 8(a), the complaint warrants dismissal.

**WHEREFORE**, deponent respectfully requests that the motion be granted, together with such other, further and different relief as the Court deems just or proper.

JAMES E. SCHWARTZ

Sworn to before me
this 27 day of March, 2008

NOTARY PUBLIC

RACHEL E. WILLIAMS
Notary Public, State of New York
No. 02WI6134569
Qualified in New York County
Commission Expires October 3, 2009

G:\WPFILES\Schwartz\wpdocs\Johnson v. James (Fidelity) Affidavit of JES.doc

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

THEODORE F. JOHNSON,

                              Plaintiff,

         - against -

DEBRA A. JAMES, a/k/a JUDGE DEBRA A. JAMES,
NATALIA SWAN, a/k/a NATALIA WOLAN,
ALTERMAN and BOOP, LLP, WILLIAM SCHAAP,
ESQ., ROBERT S. SIKORSKI, FIDELITY NATIONAL
TITLE INSURANCE COMPANY, YOLANDA CHANG,
Broker, GWENERVA "DARLING" CHERRY, AND
H.P.D. NEW YORK CITY DEPARTMENT OF
FINANCE, et al.,

                              Defendants.

**Civil Action No:**
**08 CV 00032 (PAC)**

**MEMORANDUM OF LAW OF DEFENDANT**
**FIDELITY NATIONAL TITLE INSURANCE COMPANY**

**PRELIMINARY STATEMENT**

        Defendant Fidelity National Title Insurance Company ("Fidelity") respectfully submits

this memorandum of law in support of its motion pursuant to Fed. R. Civ. P. 12(b)(6), 9(b) and

8(a) to dismiss the complaint based upon: (i) the Rooker-Feldman doctrine (which bars lower

federal courts from reviewing state court judgments), (ii) principles of collateral estoppel, and

(iii) lack of any duty that Fidelity could conceivably owe to Mr. Johnson.

        An underlying action in New York State Supreme Court captioned Swan v. Johnson

(Sup. Ct., N.Y. Co., Index No. 106400/05) (the "State Court Action") has resulted in two orders

– one dated January 4, 2006 ("Order #1") and one dated December 14, 2006 ("Order #2") –

granting specific performance to Natalia Swan (a/k/a Natalia Wolan) and compelling

Mr. Johnson to convey to her real property located at 121 West 118th Street, New York, New York (the "Property"), pursuant to a contract of purchase and sale that they had signed (the "Contract"). In 2007, title to the Property passed from Mr. Johnson to Ms. Swan.

Here, Mr. Johnson claims legal entitlement to the Property. But Orders #1 and #2 govern his rights vis-à-vis Ms. Swan. As such, under <u>Rooker-Feldman</u>, and the principles of collateral estoppel, this Court may not revisit the issue.

What is the involvement of Fidelity in all of this? It was <u>Ms. Swan's</u> title insurer. As such, it owed no duty to Mr. Johnson. In addition, pursuant to Orders #1 and #2, Fidelity cannot, as a matter of law, have caused any legally cognizable harm to Mr. Johnson by insuring Ms. Swan's title, precisely because Ms. Swan had, before she took title, already been judicially declared to have the right to acquire, and to own, the Property.

## **FACTS**

Plaintiff commenced this action via summons and complaint dated January 3, 2008 (the "Complaint") to essentially re-litigate claims that he had already litigated and lost in the State Court Action.

Mr. Johnson's Sixth Cause of Action – his only claim against Fidelity – rests on two threadbare paragraphs of the complaint (71 and 72) neither of which, whether considered alone or together, spells out a viable cause of action:

> 71. Fidelity National Title Insurance Company knew <u>or should have known that the property</u> at 121 West 118th Street, New York, New York 10026, Section 7, Block 1903, Lot 20, <u>is the property of plaintiff Theodore F. Johnson</u> a/k/a Ted El Inc. Real Estate Holding Corp.

2

72. Plaintiff, Theodore F. Johnson bought said property from the City of New York, Department of General Services, 2 Lafayette Street, Room 1801, New York, New York 100[0]7, and not from Ralph Johnson.

(emphasis added)

But the state court, by Orders #1 and #2, had already held that Mr. Johnson lacked a right to continue to own the Property and that he must convey it to Ms. Swan. Order #1, entered before Mr. Johnson ever sued here, states:

ORDERED AND ADJUDGED that plaintiff's motion for summary judgment is GRANTED, and defendant Theodore Johnson shall specifically perform the contract of sale dated July 25, 2002 between himself and plaintiff Natalia Swan a/k/a Natalia Wolan, and, upon the plaintiff's performance of her obligations under the contract, including payment of the purchase price, [defendant shall] deliver the bargain and sale deed with covenants for the subject premises and fulfill his other obligations under the contract to the plaintiff at a closing to be held no later than ninety days of the date hereof...

And pursuant to Order #2, also entered before Mr. Johnson ever sued here, the state court had appointed a receiver to convey the Property to Ms. Swan:

ORDERED, that Plaintiff's [Ms. Swan's] motion be and the same is hereby granted to the extent that Robert S. Sikorski, Esq., Room 815, 381 Park Avenue South, New York, New York 10016 is appointed Receiver for the purpose of conveying in the name of Defendant [Mr. Johnson] and in his stead, the property known as 121 West 118th Street, New York, New York to Plaintiff pursuant to the contract between Plaintiff and Defendant dated July 25, 2002...

ORDERED that said Receiver shall have the full authority in his discretion to escrow sums with the title insurance company insuring this transaction, to wit. Fidelity National Title Insurance Company to secure the release of any liens and/or to compromise such liens and/or to pay such liens in his discretion in order to

insure a timely closing but with consistent with the attempt to preserve the maximum funds for Defendant's benefit...

ORDERED that such conveyance shall occur within thirty (30) days of the date hereof or as soon thereafter as the Receiver can do so...

Fidelity acted merely as the title insurance company for Ms. Swan on the sale of the Property and had no other association with, or relation to, Mr. Johnson.

## ARGUMENT

### A.

### THIS COURT MAY NOT REVIEW A STATE COURT'S ORDER.

Under the Rooker-Feldman doctrine, a lower federal court may not review a judgment of a state court. Rooker v. Fidelity Trust Co., 263 U.S. 413, 68 L. Ed. 362, 44 S. Ct. 149 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, L.Ed.2d 2006, 103 S. Ct. 1303 (1983). "Inferior federal courts have no subject matter jurisdiction over cases that effectively seek review of judgment of state courts and that federal review, if any, can occur only by way of a certiorari petition to the Supreme Court." Hason v. Office of Professional Med. Conduct, 314 F.Supp. 2d 241 (S.D.N.Y. 2004).

Orders #1 and #2 are valid, un-reversed orders of the New York State Supreme Court. If Mr. Johnson disagreed with either Order, he had a remedy: an appeal. But Mr. Johnson never appealed. Instead, he is now attempting to undermine the state court's authority by suing in federal court.

Four requirements govern the doctrine's application: (1) the federal plaintiff must have lost in state court; (2) the plaintiff's injuries must be caused by the state court judgment; (3) the

plaintiff's claims must invite the district court to review and reject that state court judgment; and (4) the state court judgment must have been rendered prior to the commencement of the district court proceedings. <u>Granger v. Harris</u>, Slip Copy, 2007 WL 1213416 (E.D.N.Y. 2007), <u>quoting</u> <u>Hoblock v. Albany County Bd. of Elections</u>, 422 F.3d at 85 (2d Cir. 2005).

Here, Fidelity meets all of the requirements for application of <u>Rooker-Feldman</u>. Mr. Johnson has previously litigated his allegations in New York State Supreme Court, and lost. His "injury" – the compulsion to sell to Ms. Swan – was caused by the Orders.  Mr. Johnson has now commenced this action in federal court with the same claims, essentially seeking to "un-do" the state court decision.

In sum, <u>Rooker Feldman</u> compels this action's dismissal.

**B.**

## COLLATERAL ESTOPPEL BARS THE COMPLAINT.

Collateral estoppel bars re-litigation of specific legal or factual issues in a second proceeding where: (1) the issues in both proceedings are identical; (2) the issue in the prior proceeding was actually litigated and actually decided; (3) there was a full and fair opportunity to litigate in the prior proceeding; and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.  <u>Grieve v. Tamerin</u>, 269 F.3d 149 (2d Cir. 2001).  And even though Fidelity was not a party to the state court litigation, Mr. Johnson's having been a party allows Fidelity to use the adverse factual findings against him.  <u>See, e.g.</u>, <u>Parklane Hosiery</u> <u>Co., Inc. v. Shore</u>, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed. 552 (1979) (mutuality unnecessary element of collateral estoppel; doctrine applies where party who has already had full and fair opportunity to litigate an issue seeks to re-litigate same issue).

Here, Mr. Johnson raises the very issues that have been previously litigated – and decided against him – at the state court level. Mr. Johnson had a full and fair opportunity to litigate all of his claims in the prior proceedings, and actually did so. Accordingly, Mr. Johnson is now collaterally estopped from asserting those same issues here, in federal court for this additional lesson, the complaint warrants dismissal.

For this second reason, the complaint warrants dismissal.

## C.

### FIDELITY OWED NO DUTY TO MR. JOHNSON.

Fidelity and Mr. Johnson were never in privity of contract. As part of her acquisition of the Property, Ms. Swan independently purchased a title insurance policy from Fidelity. Mr. Johnson was not a named insured under that policy, and Fidelity was under no obligation to insure Mr. Johnson from any potential defects in title. See, e.g., Sabo v. Alan B. Brill, P.C., 25 A.D.3d 420, 808 N.Y.S.2d 194 (2d Dep't 2006) (title insurance company liable in negligence solely to a person who contracts for insurer's services); Calamari v. Grace, 98 A.D.2d 74, N.Y.S.2d 942 (2d Dep't 1983) (same).

For this final reason, the complaint warrants dismissal.

## CONCLUSION

Defendant Fidelity's application to dismiss the complaint for legal insufficiency should be granted because: (i) this Court lacks subject matter jurisdiction under the Rooker-Feldman doctrine, (ii) collateral estoppel bars Mr. Johnson from relitigating his claims, and (iii) Fidelity owed no duty to Mr. Johnson as they were never in privity of contract.

Dated: New York, New York
      March 27, 2008

                    STEMPEL BENNETT CLAMAN &
                    HOCHBERG, P.C.

      By: _____
                    JAMES E. SCHWARTZ (9608)
                    Attorneys for Defendant Fidelity National
                    Title Insurance Company
                    675 Third Avenue
                    New York, New York 10017
                    (212) 681-6500
                    (212) 681-4041 (fax)

# SUPREME COURT OF THE STATE OF NEW YORK – NEW YORK COUNTY

PRESENT:    <u>__DEBRA A. JAMES__</u>                           PART  59
                  *Justice*

NATALIA SWAN a/k/a NATALIA WOLAN,

                                    Plaintiff,          Index No.:    __106400/05__

                    - v -                               Motion Date:   __11/18/05__

THEODORE JOHNSON,                                       Motion Seq. No.:__002__

                                    Defendant.          Motion Cal. No.: _____

The following papers, numbered 1 to 32 were read on this motion for summary judgment <u>directing</u>
<u>specific performance</u>.

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion/Order to Show Cause -Affidavits -Exhibits _____ | 1-150 |
| Answering Affidavits - Exhibits _____ | 151-190 |
| Replying Affidavits - Exhibits _____ | 191-197 |

Cross-Motion:    ☐ Yes    ☒ No

Upon the foregoing papers,

     The "other liens or encumbrances that Seller is obligated to
pay or discharge" under paragraph 20 of the contract of sale of
July 25, 2002 clearly include the obligations set forth in
paragraph 10(b) of that contract.  Paragraph 10(b) provides that
defendant pay at or prior to Closing: "All obligations affecting
the Premises pursuant to the Administrative Code of the City of
New York incurred prior to Closing and payable in money."

     Paragraph 20 of the contract grants defendant two
alternatives for paying or discharging such liens or
encumbrances.  It permits defendant to either "use any portion of
the cash balance of the purchase price" to satisfy these

FILED

JAN - 9 2006

NEW YORK
COUNTY CLERK'S OFFICE

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Check One:    ☒ FINAL DISPOSITION       ☐ NON-FINAL DISPOSITION

Check if appropriate:    ☐ DO NOT POST       ☐ REFERENCE

obligations or "deposit sufficient monies with the title
insurance company employed by plaintiff" to dispose of these
obligations.  The contract does not condition defendant's promise
to close on the resolution of his challenges to judgments arising
from assessments made on the property under the New York City
Administrative Code.  The letter agreement of November 26, 2002
signed by the parties' attorneys is not to the contrary, and
indeed reaffirms the contract provisions that permit defendant to
either pay the obligations or set up a fund sufficient to dispose
of any judgments that remain after challenges he makes are
resolved.

     Defendant argues that he would lose his right to challenge
the propriety of the liens held by New York City were he to
convey the Premises to plaintiff.

     First, to the extent that any such liens have not been
reduced to a judgment, plaintiff concedes that she is obligated
to take the property subject to such liens.

     Second, contrary to defendant's argument, <u>Ahern v Pierce</u>,
236 A.D.2d 343 (2d Dept. 1997) does not support his position with
respect to the unsatisfied monetary judgments.  <u>Ahern</u>, which
concerns a foreclosure action and the right of a purchaser of a
property acquired at a foreclosure sale to commence a re-
foreclosure action to resolve liens of holders not named in the
original foreclosure action, is totally inapposite.  That

-2-

Greenpoint Savings Bank, the original mortgagee in <u>Ahern</u> lost its standing to pursue the resolution of outstanding liens after it sold the property has nothing to do with the right of the defendant at bar to defend the proceeds of the sale against judgments entered in favor of the City of New York.

In fact, the holding in <u>Department of Housing Preservation & Development v 849 St. Nicholas Equities</u>, 141 Misc 2d 258 (Civ Ct, NY County 1988), the other decision cited by defendant, is consistent with the representations made in the affidavit of the title company's counsel in this case that:

> a closing "escrow" is a common accommodation made by title companies to a Seller. When a Seller has monetary judgments he has not paid for any reason, including situations where the Seller claims the judgment is invalid; a title company will regularly offer an escrow agreement rather than requiring absolute payment. Under such agreements, the title company takes an amount which, in its opinion, is sufficient to cover the judgment and any interest and penalties which might accrue during some agreed upon period in the future. The title company then simply holds the escrow deposit and affords the Seller the agreed upon period in which to attempt to have the judgments vacated, compromised or otherwise resolved and provide title with proof of same.

<u>849 St. Nicholas Equities</u> involved the City of New York's right to recoup expenses incurred in carrying out emergency repairs to apartment buildings either in an action to enforce its lien against the property or in an action against the owner of the property. In that decision, the court held that the registered managing agent are by operation of law "owners" of such buildings

-3-

for the purposes of imposing personal liability on them to recover costs of repairs.

Like the registered agents in <u>849 St. Nicholas Equities</u>, defendant is personally liable on any judgments that remain after his challenges.  Upon the closing of the transaction with plaintiff, his challenges to the propriety of the liens would involve a determination of his personal liability on the judgments awarded to the City of New York.  Under the agreement provided for in Paragraph 10(b) of the contract of sale, and as described by counsel for the title company, such personal liability would be secured by the deposit of a portion of the proceeds of the sale into an escrow account.

The title company employed by plaintiff stood ready on August 15, 2005, and currently stands ready to establish an escrow account in which would be deposited a portion of the purchase price sufficient to satisfy the liens and encumbrances against the premises that are outstanding, including interest and penalties.  The company also urges that defendant will be afforded reasonable extensions of an agreed upon period for the maintenance of the escrow account so that he may pursue his challenges to any judgments and/or liens.  When those challenges are resolved, the title company will pay the remaining judgments or liens, if any, directly from the escrow and remit any excess funds to the defendant.

-4-

Therefore, plaintiff is entitled to specific performance from defendant of the contract of sale, which is now more than three years old. At least one week prior to the scheduled closing, plaintiff shall cause the title company to render to defendant a statement that sets forth detailed calculations with respect to the monetary judgments against defendant that appear on the title report plus any interest and penalties that will accrue during the period of the escrow agreement, and which must be funded in order to "insure that the Purchaser has good clear title, effectively free and clear of any of the judgments."

Accordingly, it is hereby

ORDERED and ADJUDGED that plaintiff's motion for summary judgment is GRANTED, and defendant Theodore Johnson shall specifically perform the contract of sale dated July 25, 2002 between himself and plaintiff Natalia Swan a/k/a Natalia Wolan, and, upon the plaintiff's performance of her obligations under the contract, including payment of the purchase price, deliver the bargain and sale deed with covenants for the subject premises and fulfill his other obligations under the contract to the plaintiff at a closing to be held no later than ninety days of the date hereof, and that the date for calculating adjustments be established as of April 1, 2006, or such other date that the parties can agree; and it is further,

ORDERED and ADJUDGED that the Clerk shall enter judgment accordingly.

-5-

This is the decision and order of the court.

**Dated:** ___January 4, 2006___                    ENTER:

_____

**DEBRA A. JAMES** *J.S.C.*
J.S.C.

FILED

[JAN - 9 2006

NEW YORK
COUNTY CLERK'S OFFICE

*C 2 ?*

At Part 59 of the Supreme Court of
the State of New York, held in and
for the County of New York the ~~14th~~
day of ~~December~~ 2006.
~~November~~

P R E S E N T : HON. <u>Debra A. James</u>
                                        Justice

-----------------------------------------------------------------X

NATALIA SWAN a/k/a NATALIA WOLAN,

       Plaintiff,

     -against-

THEODORE JOHNSON,

       Defendant .

-----------------------------------------------------------------X

Index No.: 106400/05

**. ORDER**

# FILED

DEC 18 2006

NEW YORK
COUNTY CLERKS OFFICE

Plaintiff Natalia Swan a/k/a Natalia Wolan having moved by Order to Show cause

dated April 7, 2006 to hold Defendant in contempt and for the appointment of a Receiver to

convey the subject property known as 121 West 118th Street, New York, New York; Defendant

having opposed such motion and that matter having duly come on to be heard and

       NOW, upon reading and filing of Plaintiff's Order to Show Cause dated April 7,

2006, the affirmation of Arlene F. Boop, Esq. dated April 5, 2006, the attached exhibits including

the summons and complaint and this Court's prior order dated January 4, 2006, granting

Plaintiff summary judgment; the affirmation of William Schaap, Esq. dated April 5, 2006; and

the reply affirmation of Arlene F. Boop, Esq. dated May 1, 2006; all in support thereof and the

Answer to such Order to Show Cause by Theodore F. Johnson, *pro se* in opposition thereto, and

due deliberation having been held thereon,

NOW, upon the filing of a decision dated October 2, 2006, it is hereby

ORDERED that Plaintiff's motion be and the same is hereby granted to the extent

that Robert S. Sikorski, Esq., Room 615, 381 Park Avenue South New York, N.Y. 10016 is appointed Receiver for the purpose of conveying in the name of Defendant and in his stead the property known as 121 West 118th Street, New York, New York to Plaintiff pursuant to the contract between Plaintiff and Defendant dated July 25, 2002 ("contract"), upon his/her executing and acknowledging, in the usual form, and filing with the Clerk of this Court, for the County of New York, an undertaking in the sum of seven hundred twenty-five thousand ($725,000) Dollars, with a duly authorized Surety Company as surety, to be approved by a justice of this court, conditioned for the faithful discharge of [his or her] duties and the duty of accounting for all moneys and property received by [him or her] as such Receiver, and it is further,

ORDERED that the Receiver take possession of the aforesaid property to the extent necessary to convey same and that the Receiver may incur at the expense of such property, such costs and charges, and make such disbursements as may be actually necessary for obtaining possession thereof, and executing the duties imposed by this order, and that the Receiver is authorized to institute and carry on, negotiate, compromise and settle all legal proceedings necessary to take possession of and to convey same, and to employ counsel in connection with any matters involving the property necessary to so take possession and convey the property free and clear of encumbrances to title, as provided by the aforesaid contract of sale, and it is further,

ORDERED that said Receiver shall have the right to use sales proceeds to satisfy

FILED
DEC 18 2006
NEW YORK
COUNTY CLERK'S OFFICE

2

any of Defendant Theodore Johnson's obligations under the contract including judgments, liens, and adjustments, transfer taxes and such other and customary expenses of the sale and it is hereby further,

ORDERED that said Receiver shall have the full authority in his/her discretion to escrow sums with the title insurance company insuring this transaction, to wit. Fidelity Natinal Title Insurance Company to secure the release of any liens and/or to compromise such liens and/or to pay such liens in his/her discretion in order to insure a timely closing but with consistent with the attempt to preserve the maximum funds for Defendant's benefit, and it is further,

ORDERED that such conveyance shall occur within thirty (30) days of the date hereof or as soon thereafter as the Receiver can do so and it is further,

ORDERED that the Receiver shall forthwith deposit all net proceeds of the sale received by the Receiver in the Receiver's own name as receiver, in an interest bearing or IOLA account listing the name of the case in ___J.P. Morgan Chase___ (name of bank) and that no funds shall be withdrawn from the account and no check thereon honored unless directed by _J.S.C_ court order, and it is further,

ORDERED that upon completion of the sale, the Receiver shall move in this Court for an allowance of a commission of fees under CPLR §8004 and upon the issuance of an order setting such commission shall pay said sum to himself/herself and remit the balance to Defendant and it is further,

ORDERED that Defendant Theodore Johnson be and he is hereby directed and enjoined from interfering with the possession of the Receiver in regard to the property or with the performance of the Receiver's duties under this order, and it is further,

3

ORDERED that the Receiver may at any time apply to this court for an order or other instructions or powers necessary to enable the Receiver properly to fulfill [his or her] duties.

E N T E R:

DEC 1 - 2006

DEBRA A. JAMES
J.S.C.

FILED

DEC 18 2006

NEW YORK
COUNTY CLERKS OFFICE

4

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

THEODORE F. JOHNSON,

                                        Plaintiff,

        - against -

DEBRA A. JAMES, a/k/a JUDGE DEBRA A. JAMES,
NATALIA SWAN, a/k/a NATALIA WOLAN,
ALTERMAN and BOOP, LLP, WILLIAM SCHAAP,
ESQ., ROBERT S. SIKORSKI, FIDELITY NATIONAL
TITLE INSURANCE COMPANY, YOLANDA CHANG,
Broker, GWENERVA "DARLING" CHERRY, AND
H.P.D. NEW YORK CITY DEPARTMENT OF
FINANCE, et al.,

                                        Defendants.

**Civil Action No:**
**08 CV 00032 (PAC)**

**EXHIBIT C**

Exhibit C, the Summons and Complaint, is not being filed here due to its size, but is

available upon request from Movant's counsel, as follows:

        James E. Schwartz, Esq.
        Stempel Bennett Claman & Hochberg, P.C.
        675 Third Avenue
        New York, New York 10017
        (212) 681-6500
        (212) 681-4041 (fax)
        jschwartz@sbchlaw.com

125-Residential contract of sale. 11-2000

*Jointly prepared by the Real Property Section of the New York State Bar Association, the New York State Land Title Association, the Committee on Real Property Law of the Association of the Bar of the City of New York and the Committee on Real Property Law of the New York County Lawyers' Association.*

BlumbergExcelsior® Publisher, NYC 10013
www.blumberg.com

**WARNING: NO REPRESENTATION IS MADE THAT THIS FORM OF CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE COMPLIES WITH SECTION 5-702 OF THE GENERAL OBLIGATIONS LAW ("PLAIN LANGUAGE").**

**CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT**

NOTE: FIRE AND CASUALTY LOSSES AND CONDEMNATION.
This contract form does not provide for what happens in the event of fire, or other casualty loss or condemnation before the title closing. Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply. One part of that law makes a Purchaser responsible for fire and casualty loss upon taking possession of the Premises before the title closing.

## Residential Contract of Sale

**Contract of Sale** made as of July 25, 2002

BETWEEN

Theodore Johnson

Address: 205 Brown Avenue, Hempstead, NY   11550
Social Security Number/ Fed. I. D. No(s):

hereinafter called "Seller" and

Natalia Wolan

Address: c/o William Schaap, Esq., 143 West 4th Street, New York, NY   1012
Social Security Number/ Fed. I. D. No(s): 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

hereinafter called "Purchaser".

**The parties hereby agree as follows:**

**1. Premises.** Seller shall sell and convey and Purchaser shall purchase the property, together with all buildings and improvements thereon (collectively the "Premises"), more fully described on a separate page marked "Schedule A", annexed hereto and made a part hereof and also known as: 121 W. 118th St
Street Address: 121 W. 118th Street

Tax Map Designation: B1: 1903; Lot: 20

Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller shall deliver at no additional cost to Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

**2. Personal Property.** This sale also includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below. Seller represents and warrants that at Closing they will be paid for and owned by Seller, free and clear of all liens and encumbrances, except any existing mortgage to which this sale may be subject. They include, but are not limited to, plumbing, heating, lighting and cooking fixtures, chandeliers, bathroom and kitchen cabinets and counters, mantels, door mirrors, switch plates and door hardware, venetian blinds, window treatments, shades, screens, awnings, storm windows, storm doors, window boxes, mail box, TV aerials, weather vane, flagpole, pumps, shrubbery, fencing, outdoor statuary, tool shed, dishwasher, washing machine, clothes dryer, garbage disposal unit, range, oven, built-in microwave oven, refrigerator, freezer, air conditioning equipment and installations, wall to wall carpeting and built-ins not excluded below (*strike out inapplicable items*).
As as available on date of contract.

Excluded from this sale are furniture and household furnishings and
none.

**3. Purchase Price.** The purchase price is $     725000.00
payable as follows:
(a) on the signing of this contract, by Purchaser's good check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to paragraph 6 of this contract (the "Downpayment"):

$     72500.00

(b) by allowance for the principal amount unpaid on the existing mortgage on the date hereof, payment of which Purchaser shall assume by joinder in the deed:     $

(c) by a purchase money note and mortgage from Purchaser to Seller:     $

(d) balance at Closing in accordance with paragraph 7:     $

$     652500.00

**4. Existing Mortgage.** (*Delete if inapplicable*) If this sale is subject to an existing mortgage as indicated in paragraph 3(b) above:
(a) The Premises shall be conveyed subject to the continuing lien of the existing mortgage, which is presently payable, with interest at the rate of          percent per annum, in monthly installments of $          which include principal, interest and escrow amounts, if any, and with any balance of principal being due and payable on

(b) To the extent that any required payments are made on the existing mortgage between the date hereof and Closing which reduce the unpaid principal amount thereof below the amount shown in paragraph 3(b), then the balance of the price payable at Closing under paragraph 3(d) shall be increased by the amount of

the payments of principal. Seller represents and warrants that the amount shown in paragraph 3(b) is substantially correct and agrees that only payments required by the existing mortgage will be made between the date hereof and Closing.

(c) If there is a mortgage escrow account, Seller shall assign it to Purchaser, if it can be assigned, and in that case Purchaser shall pay the amount in the escrow account to Seller at Closing.

(d) Seller shall deliver to Purchaser at Closing a certificate dated not more than 30 days before Closing signed by the holder of the existing mortgage, in form for recording, certifying the amount of the unpaid principal, the date to which interest has been paid and the amounts, if any, claimed to be unpaid for principal and interest, itemizing the same. Seller shall pay the fees for recording such certificate. If the holder of the existing mortgage is a bank or other institution as defined in Section 274-a of the Real Property Law it may, instead of the certificate, furnish a letter signed by a duly authorized officer, employee or agent, dated not more than 30 days before Closing, containing the same information.

(e) Seller represents and warrants that (i) Seller has delivered to Purchaser true and complete copies of the existing mortgage, the note secured thereby and any extensions and modifications thereof, (ii) the existing mortgage is not now, and at the time of Closing will not be, in default, and (iii) the existing mortgage does not contain any provision that permits the holder of the mortgage to require its immediate payment in full or to change any other term thereof by reason of the sale or conveyance of the Premises.

5. **Purchase Money Mortgage.** (*Delete if inapplicable*) If there is to be a purchase money mortgage as indicated in paragraph 3(c) above:

(a) The purchase money note and mortgage shall be drawn by the attorney for Seller in the form attached or, if not, in the standard form adopted by the New York State Land Title Association. Purchaser shall pay at Closing the mortgage recording tax, recording fees and the attorney's fees in the amount of $ for its preparation.

(b) The purchase money note and mortgage shall also provide that it is subject and subordinate to the lien of the existing mortgage and any extensions, modifications, replacements or consolidations of the existing mortgage, provided that (i) the interest rate thereof shall not be greater than _____ percent per annum and the total debt service thereunder shall not be greater than $_____ per annum and (ii) if the principal amount thereof shall exceed the amount of principal owing and unpaid on the existing mortgage at the time of placing such new mortgage or consolidated mortgage, the excess be paid to the holder of such purchase money mortgage in reduction of the principal thereof. The purchase money mortgage shall also provide that such payment to the holder thereof shall not alter or affect the regular installments, if any, of principal payable thereunder and that the holder thereof will, on demand and without charge therefor, execute, acknowledge and deliver any agreement or agreements further to effectuate such subordination.

6. **Downpayment in Escrow.** (a) Seller's attorney ("Escrowee") shall hold the Downpayment in escrow in a segregated bank account at JPMorgan Chase

address

281 Broadway, New York, NY

until Closing or sooner termination of this contract and shall pay over or apply the Downpayment in accordance with the terms of this paragraph. Escrowee shall hold the Downpayment in a(n) interest-bearing account for the benefit of the parties. If interest is held for the benefit of the parties, it shall be paid to the party entitled to the Downpayment and the party receiving the interest shall pay any income taxes thereon. If interest is not held for the benefit of the parties, the Downpayment shall be placed in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee upon request. At Closing, the Downpayment shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 25) to Escrowee demanding payment of the Downpayment, Escrowee

shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of objection from such other party to the proposed payment within 10 business days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such Notice of objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this contract or a final, non-appealable judgment, order or decree of a court. However, Escrowee shall have the right at any time to deposit the Downpayment and the interest thereon with the clerk of a court in the county in which the Premises are located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this paragraph, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally (with right of contribution) agree to defend (by attorneys selected by Escrowee), indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(c) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.

(d) Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provisions of this paragraph by signing in the place indicated on the signature page of this contract.

(e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

(f) The party whose attorney is Escrowee shall be liable for loss of the Downpayment.

7. **Acceptable Funds.** All money payable under this contract, unless otherwise specified, shall be paid by:

(a) Cash, but not over $ 1,000.00;

(b) Good certified check of Purchaser drawn on or official check issued by any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York, unendorsed and payable to the order of Seller, or as Seller may otherwise direct upon reasonable prior notice (by telephone or otherwise) to Purchaser

(c) As to money other than the purchase price payable to Seller at Closing, uncertified check of Purchaser up to the amount of $ 2000.00 ; and

(d) As otherwise agreed to in writing by Seller or Seller's attorney.

8. **Mortgage Commitment Contingency.** (*Delete paragraph if inapplicable. For explanation, see Notes on Mortgage Commitment Contingency Clause.*) (a) The obligation of Purchaser to purchase under this contract is conditioned upon issuance, on or before _____ days after a fully executed copy of this contract is given to Purchaser or Purchaser's attorney in the manner set forth in paragraph 25 or subparagraph 8(j) (the "Commitment Date"), of a written commitment from an Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, other than a VA, FHA or other governmentally insured loan, to Purchaser, at Purchaser's sole cost and expense, of $ _____ for a term of at least _____ years (or such lesser sum or shorter term as Purchaser shall be will-

2

ing to accept) at the prevailing fixed or adjustable rate of interest and on other customary commitment terms (the "Commitment"). To the extent a Commitment is conditioned on the sale of Purchaser's current home, payment of any outstanding debt, no material adverse change in Purchaser's financial condition or any other customary conditions, Purchaser accepts the risk that such conditions may not be met; however, a commitment conditioned on the Institutional Lender's approval of an appraisal shall not be deemed a "Commitment" hereunder until an appraisal is approved (and if that does not occur before the Commitment Date, Purchaser may cancel under subparagraph 8(e) unless the Commitment Date is extended). Purchaser's obligations hereunder are conditioned only on issuance of a Commitment. Once a Commitment is issued, Purchaser is bound under this contract even if the lender fails or refuses to fund the loan for any reason.

(b) Purchaser shall (i) make prompt application to one or, at Purchaser's election, more than one Institutional Lender for such mortgage loan, (ii) furnish accurate and complete information regarding Purchaser and members of Purchaser's family, as required, (iii) pay all fees, points and charges required in connection with such application and loan, (iv) pursue such application with diligence, and (v) cooperate in good faith with such Institutional Lender(s) to obtain a Commitment. Purchaser shall accept a Commitment meeting the terms set forth in subparagraph 8(a) and shall comply with all requirements of such Commitment (or any other commitment accepted by Purchaser). Purchaser shall furnish Seller with a copy of the Commitment promptly after receipt thereof.

(c) (Delete this subparagraph if inapplicable) Prompt submission by Purchaser of an application to a mortgage broker registered pursuant to Article 12-D of the New York Banking Law ("Mortgage Broker") shall constitute full compliance with the terms and conditions set forth in subparagraph 8(b)(i), provided that such Mortgage Broker promptly submits such application to such Institutional Lender(s). Purchaser shall cooperate in good faith with such Mortgage Broker to obtain a Commitment from such Institutional Lender(s).

(d) If all Institutional Lenders to whom applications were made deny such applications in writing prior to the Commitment Date, Purchaser may cancel this contract by giving Notice thereof to Seller, with a copy of such denial, provided that Purchaser has complied with all its obligations under this paragraph 8.

(e) If no Commitment is issued by an Institutional Lender on or before the Commitment Date, then, unless Purchaser has accepted a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), Purchaser may cancel this contract by giving Notice to Seller within 5 business days after the Commitment Date, provided that such Notice includes the name and address of the Institutional Lender(s) to whom application was made and that Purchaser has complied with all its obligations under this paragraph 8.

(f) If this contract is canceled by Purchaser pursuant to subparagraphs 8(d) or (e), neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser and except as set forth in paragraph 27.

(g) If Purchaser fails to give timely Notice of cancellation or if Purchaser accepts a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), then Purchaser shall be deemed to have waived Purchaser's right to cancel this contract and to receive a refund of the Downpayment by reason of the contingency contained in this paragraph 8.

(h) If Seller has not received a copy of a commitment from an Institutional Lender accepted by Purchaser by the Commitment Date, Seller may cancel this contract by giving Notice to Purchaser within 5 business days after the Commitment Date, which cancellation shall become effective unless Purchaser delivers a copy of such commitment to Seller within 10 business days after the Commitment Date. After such cancellation neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser (provided Purchaser has complied with all its obligations under this paragraph 8) and except as set forth in paragraph 27.

(i) For purposes of this contract, the term "Institutional Lender"

shall mean any bank, savings bank, private banker, trust company, savings and loan association, credit union or similar banking institution whether organized under the laws of this state, the United States or any other state; foreign banking corporation licensed by the Superintendent of Banks of New York or regulated by the Comptroller of the Currency to transact business in New York State; insurance company duly organized or licensed to do business in New York State; mortgage banker licensed pursuant to Article 12-D of the Banking Law; and any instrumentality created by the United States or any state with the power to make mortgage loans.

(j) For purposes of subparagraph 8(a), Purchaser shall be deemed to have been given a fully executed copy of this contract on the third business day following the date of ordinary or regular mailing, postage prepaid.

**9. Permitted Exceptions.** The Premises are sold and shall be conveyed subject to:

(a) Zoning and subdivision laws and regulations, and landmark, historic or wetlands laws and regulations, provided that they are not violated by the existing buildings and improvements erected on the property or their use;

(b) Consents for the erection of any structures on, under or above any streets on which the Premises abut;

(c) Encroachments of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway;

(d) Real estate taxes that are a lien, but are not yet due and payable; and

(e) The other matters, if any, including a survey exception, set forth in a Rider attached.

**10. Governmental Violations and Orders.** (a) Seller shall comply with all notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued as of the date hereof by any governmental department having authority as to lands, housing, buildings, fire, health, environmental and labor conditions affecting the Premises. The Premises shall be conveyed free of them at Closing. Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters.

(b) (Delete if inapplicable) All obligations affecting the Premises pursuant to the Administrative Code of the City of New York incurred prior to Closing and payable in money shall be discharged by Seller at or prior to Closing.

**11. Seller's Representations.** (a) Seller represents and warrants to Purchaser that:

(i) The Premises abut or have a right of access to a public road;

(ii) Seller is the sole owner of the Premises and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract;

(iii) Seller is not a "foreign person", as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA");

(iv) The Premises are not affected by any exemptions or abatements of taxes; and

(v) Seller has been known by no other name for the past ten years, except

(b) Seller covenants and warrants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.

(c) Except as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this contract shall survive Closing.

**12. Condition of Property.** Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall

accept the same "as is" in their present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of Closing (except as otherwise set forth in paragraph 16(e), without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract. Purchaser and its authorized representatives shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before Closing.

13. Insurable Title. Seller shall give and Purchaser shall accept such title as **any reputable title company**

shall be willing to approve and insure in accordance with its standard form of title policy approved by the New York State Insurance Department. subject only to the matters provided for in this contract.

14. Closing, Deed and Title. (a) "Closing" means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser of a

**bargain & sale w/covenants against**

deed in proper statutory short form for record, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated. The deed shall contain a covenant by Seller as required by subd. 5 of Section 13 of the Lien Law.

(b) If Seller is a corporation, it shall deliver to Purchaser at the time of Closing (i) a resolution of its Board of Directors authorizing the sale and delivery of the deed, and (ii) a certificate by the Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law. The deed in such case shall contain a recital sufficient to establish compliance with that Section.

15. Closing Date and Place. Closing shall take place at the office of **Cherry & Marshburn, LLP**
**305 Broadway, Suite 303, NYC**

at **11** o'clock on **w/in _to_ X** days of receipt _of_ or, upon reasonable notice (by telephone or otherwise) by Purchaser, at the office of
**lender's attorney**

_title insurance report_

16. Conditions to Closing. This contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:

(a) The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract.

(b) The delivery by Seller to Purchaser of a valid and subsisting Certificate of Occupancy or other required certificate of compliance, or evidence that none was required, covering the building(s) and all of the other improvements located on the property authorizing their use as a **as a title report** ~~family dwel-~~ ling at the date of Closing. _will show_

(c) The delivery by Seller to Purchaser of a certificate stating that Seller is not a foreign person, which certificate shall be in the form then required by FIRPTA or a withholding certificate from the I.R.S. If Seller fails to deliver the aforesaid certificate or if Purchaser is not entitled under FIRPTA to rely on such certificate, Purchaser shall deduct and withhold from the purchase price a sum equal to 10% thereof (or any lesser amount permitted by law) and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.

(d) The delivery of the Premises and all building(s) and improvements comprising a part thereof in broom clean condition, vacant and free of leases or tenancies, together with keys to the Premises.

(e) All plumbing (including water supply and septic systems, if

any), heating and air conditioning, if any, electrical and mechanical systems, equipment and machinery in the building(s) located on the property and all appliances which are included in this sale being in working order as of the date of Closing.

(f) If the Premises are a one or two family house, delivery by the parties at Closing of affidavits in compliance with state and local law requirements to the effect that there is installed in the Premises a smoke detecting alarm device or devices.

(g) The delivery by the parties of any other affidavits required as a condition of recording the deed.

17. Deed Transfer and Recording Taxes. At Closing, certified or official bank checks payable to the order of the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by law or by this contract to pay such transfer and/or recording tax, together with any required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing.

18. Apportionments and Other Adjustments; Water Meter and Installment Assessments. (a) To the extent applicable, the following shall be apportioned as of midnight of the day before the day of Closing:

(i) taxes, water charges and sewer rents, on the basis of the fiscal period for which assessed; (ii) fuel; (iii) interest on the existing mortgage; (iv) premiums on existing transferable insurance policies and renewals of those expiring prior to Closing; (v) vault charges; (vi) rents as and when collected.

(b) If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the immediately preceding fiscal period applied to the latest assessed valuation.

(c) If there is a water meter on the Premises, Seller shall furnish a reading to a date not more than 30 days before Closing and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.

(d) If at the date of Closing the Premises are affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installments shall be considered due and shall be paid by Seller at or prior to Closing.

(e) Any errors or omissions in computing apportionments or other adjustments at Closing shall be corrected within a reasonable time following Closing. This subparagraph shall survive Closing.

19. Allowance for Unpaid Taxes, etc. Seller has the option to credit Purchaser as an adjustment to the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less than five business days after Closing, provided that official bills therefor computed to said date are produced at Closing.

20. Use of Purchase Price to Remove Encumbrances. If at Closing there are other liens or encumbrances that Seller is obligated to pay or discharge, Seller may use any portion of the cash balance of the purchase price to pay or discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances of record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient monies with the title insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's Institutional Lender clear of such matters. Upon reasonable prior notice (by telephone or otherwise), Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters.

21. Title Examination; Seller's Inability to Convey; Limitations of Liability. (a) Purchaser shall order an examination of title in respect of the Premises from a title company licensed or authorized to issue title insurance by the New York State Insurance

4

Department or any agent for such title company promptly after the execution of this contract or, if this contract is subject to the mortgage contingency set forth in paragraph 8, after a mortgage commitment has been accepted by Purchaser. Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorney(s) for Seller promptly after receipt thereof.

(b)(i) If at the date of Closing Seller is unable to transfer title to Purchaser in accordance with this contract, or Purchaser has other valid grounds for refusing to close, whether by reason of liens, encumbrances or other objections to title or otherwise (herein collectively called "Defects"), other than those subject to which Purchaser is obligated to accept title hereunder or which Purchaser may have waived and other that those which Seller has herein expressly agreed to remove, remedy or discharge and if Purchaser shall be unwilling to waive the same and to close title without abatement of the purchase price, then, except as hereinafter set forth, Seller shall have the right, at Seller's sole election, either to take such action as Seller may deem advisable to remove, remedy, discharge or comply with such Defects or to cancel this contract; (ii) if Seller elects to take action to remove, remedy or comply with such Defects, Seller shall be entitled from time to time, upon Notice to Purchaser, to adjourn the date for Closing hereunder for a period or periods not exceeding 60 days in the aggregate (but not extending beyond the date upon which Purchaser's mortgage commitment, if any, shall expire), and the date for Closing shall be adjourned to a date specified by Seller not beyond such period. If for any reason whatsoever, Seller shall not have succeeded in removing, remedying or complying with such Defects at the expiration of such adjournment(s), and if Purchaser shall still be unwilling to waive the same and to close title without abatement of the purchase price, then either party may cancel this contract by Notice to the other given within 10 days after such adjourned date; (iii) notwithstanding the foregoing, the existing mortgage (unless this sale is subject to the same) and any matter created by Seller after the date hereof shall be released, discharged or otherwise cured by Seller at or prior to Closing.

(c) If this contract is cancelled pursuant to its terms, other than as a result of Purchaser's default, this contract shall terminate and come to an end, and neither party shall have any further rights, obligations or liabilities against or to the other hereunder or otherwise, except that: (i) Seller shall promptly refund or cause the Escrowee to refund the Downpayment to Purchaser and, unless cancelled as a result of Purchaser's default or pursuant to paragraph 8, to reimburse Purchaser for the net cost of examination of title, including any appropriate additional charges related thereto, and the net cost, if actually paid or incurred by Purchaser, for (i) updating the existing survey of the Premises or of a new survey, and (ii) the obligations under paragraph 27 shall survive the termination of this contract.

**22.** Affidavit as to Judgments, Bankruptcies, etc. If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver an affidavit at Closing showing that they are not against Seller.

**23.** Defaults and Remedies. (a) If Purchaser defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

(b) If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance.

**24.** Purchaser's Lien. All money paid on account of this contract, and the reasonable expenses of examination of title to the Premises and of any survey and survey inspection charges, are hereby made liens on the Premises, but such liens shall not continue after default by Purchaser under this contract.

**25.** Notices. Any notice or other communication ("Notice") shall be in writing and either (a) sent by either of the parties hereto or by their respective attorneys who are hereby authorized to do so on their behalf or by the Escrowee, by registered or certified mail,

postage prepaid, or

(b) delivered in person or by overnight courier, with receipt acknowledged, to the respective addresses given in this contract for the party and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designate by Notice given to the other party or parties and the Escrowee pursuant to this paragraph. Each Notice mailed shall be deemed given on the third business day following the date of mailing the same, except that any notice to Escrowee shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by overnight courier shall be deemed given when delivered, or

(c) with respect to ¶7 (b) or ¶20, sent by fax to the party's attorney. Each Notice by fax shall be deemed given when transmission is confirmed by the sender's fax machine. A copy of each Notice sent to a party shall also be sent to the party's attorney. The attorneys for the parties are hereby authorized to give and receive on behalf of their clients all Notices and deliveries.

This contract may be delivered as provided above or by ordinary mail.

**26.** No Assignment. This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment(s) made without such consent shall be null.

**27.** Broker. Seller and Purchaser each represents and warrants to the other that it has not dealt with any broker in connection with this sale other than

Home Realty

("Broker") and Seller shall pay Broker any commission earned pursuant to a separate agreement between Seller and Broker. Seller and Purchaser shall indemnify and defend each other against any costs, claims and expenses, including reasonable attorneys' fees, arising out of the breach on their respective parts of any representation or agreement contained in this paragraph. The provisions of this paragraph shall survive Closing or, if Closing does not occur, the termination of this contract.

**28.** Miscellaneous. (a) All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.

(b) Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing. This contract shall also apply to and bind the heirs, distributees, legal representatives, successors and permitted assigns of the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.

(c) Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.

(d) The captions in this contract are for convenience of reference only and in no way define, limit or describe the scope of this contract and shall not be considered in the interpretation of this contract or any provision hereof.

(e) This contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.

(f) Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This Subparagraph shall survive Closing.

(g) Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and documents and take such other action as may be reasonably requested by the other in order to carry out the intent and purpose of this contract. This subparagraph shall survive Closing.

5

RIDER TO CONTRACT OF SALE
BETWEEN THEODORE JOHNSON, SELLER,
AND NATALIA WOLAN, PURCHASER,
DATED: JULY _____, 2002
FOR PROPERTY KNOWN AS 121 W. 118TH STREET

THE PRINTED PART OF THIS CONTRACT IS HEREBY
MODIFIED AND SUPPLEMENTED. WHEREVER THERE IS
ANY CONFLICT BETWEEN THIS RIDER AND THE PRINTED
PART OF THIS CONTRACT, THE PROVISIONS OF THIS RIDER
ARE PARAMOUNT AND THE CONTRACT SHALL BE
CONSTRUED ACCORDINGLY.

### ESCROW AGENT

29.    IT IS AGREED that the down payment paid hereto will be held in escrow by CHERRY & MARSHBURN, LLP, Attorneys at Law, with offices at 305 Broadway, Suite 303, New York, New York 10007, in their IOLA account maintained at JP Morgan, until closing of title. Escrowee-Attorney shall turn over to the seller the escrow money at closing, if there is no dispute. In the event that the seller cannot convey title accordance with the terms of this agreement, the Escrowee-Attorney is authorized to release said escrow to the Purchaser.

If there is a dispute, Escrowee-Attorney shall retain the escrow deposit pending a final determination, whether by agreement, court judgment or decision, and upon such final agreement, court judgment or decision, and upon such final determination Escrowee-Attorney shall pay the escrow deposit to either party as directed by the final determination.

The parties agree that the Escrowee-Attorney is and shall remain a stakeholder only and in the event of a dispute of litigation between them, neither party shall sue or interplead the Escrowee-Attorney. If either party commences an action or proceeding against the Escrowee-Attorney by reason of a dispute between them, then the party commencing such action or proceeding shall pay the Escrowee-Attorney any expenses and attorney's fees in connection therewith

### PREMISES ARE AS IS

30.    Purchaser represents that the premises have been inspected and that he is thoroughly acquainted with its condition and agree to accept the premises "AS IS", as the date of this contract. It is understood and agreed that no representation, either express or implied, has been made as to the condition of the premises and/or the fixtures therein or occupancy by tenants currently there.

(b)    Covenants, restriction, easements, reservation, consents and agreements of record, if any, provided same are not violated by the existing dwelling structure and present use thereof and/or render title unmarketable.

(c)    Rights, if any, acquired by any utility company to maintain and operate lines, wires, cables, poles, and distribution boxes, in, over, and up on said premises.

(d)    Consents for the erection if any structure on, under, or above any street or highway.

(e)    All building and housing violations. Seller shall pay for all money judgments and liens on said property at closing.

## PERSONAL PROPERTY

32.    The personal property, if any, to be conveyed pursuant to the printed contract shall be, to the extent said personal property exists upon the subject premises, be deemed transferred to and conveyed to the purchaser under the Deed of Conveyance to be delivered, it being understood and agreed that no part of the purchase price shall be paid by the purchaser for same and that property hereunder shall be transferred without consideration.

## PURCHASER'S FAILURE TO CLOSE

33.    In event seller is ready, willing, and able to deliver title to premises as provided herein, and purchaser shall fail to complete this transaction and to accept the terms of this agreement, the downpayment by the purchaser on account of the purchase price under this contract may be retained by the seller, his heirs, personal representatives or assigns as and for liquidated damages, and thereafter, this contract shall be null and void and all claims by either party as against the other shall cease and terminate.

## ATTORNEYS AS AGENTS OF PARTIES

34.    Seller and Purchaser hereby appoint their respective attorneys listed in the contract as their agents to execute any and all instruments and to receive all notices with respect to this transaction. All notices are to be sent to each of the parties by postage prepaid, certified mail, return receipt requested:

To Seller:    Gwenerva Darling Cherry, Esq.
Cherry & Marshburn, LLP
305 Broadway, Suite 303
New York, NY  10007

To Purchaser:

## DEED AS FULL PERFORMANCE

35. The acceptance of a deed by purchaser shall be deemed to be full performance and discharge of every agreement and obligation on the part of the seller to be performed pursuant to the provisions of this agreement, except those, if any, which are herein specifically stated to survive the delivery of the deed.

## PREMISES SOLD SUBJECT TO

31.    Said premises are sold and conveyed subject to the following:

(a)    Any state of facts an accurate survey or personal inspection of the premises may show provided same does not render title unmarketable.

(b)    Covenants, restriction, easements, reservation, consents and agreements of record, if any, provided same are not violated by the existing dwelling structure and present use thereof and/or render title unmarketable.

(c)    Rights, if any, acquired by any utility company to maintain and operate lines, wires, cables, poles, and distribution boxes, in, over, and up on said premises.

(d)    Consents for the erection of any structure on, under, or above any street or highway.

(e)    All building and housing violations. Seller shall pay for all money judgments and liens on said property at closing.

## PERSONAL PROPERTY

32.    The personal property, if any, to be conveyed pursuant to the printed contract shall be, to the extent said personal property exists upon the subject premises, be deemed transferred to and conveyed to the purchaser under the Deed of Conveyance to be delivered, it being understood and agreed that no part of the purchase price shall be paid by the purchaser for same and that property hereunder shall be transferred without consideration.

## ATTORNEYS AS AGENTS OF PARTIES

33.    Seller and Purchaser hereby appoint their respective attorneys listed in the contract as their agents to execute any and all instruments and to receive all notices with respect to this transaction. All notices are to be sent to each of the parties by postage prepaid, certified mail, return receipt requested:

To Seller:    Gwenerva Darling Cherry, Esq.
Cherry & Marshburn, LLP
305 Broadway, Suite 303
New York, NY 10007

To Purchaser: William Schaap
143 West 4th Street
New York, NY 10012

## DEED AS FULL PERFORMANCE

35. The acceptance of a deed by purchaser shall be deemed to be full performance and discharge of every agreement and obligation on the part of the seller to be performed

pursuant to the provisions of this agreement, except those, if any, which are herein specifically stated to survive the delivery of the deed.

## OPPORTUNITY TO CLEAR TITLE ISSUES

36. The purchaser agrees that at least five (5) days before the date set for closing of title hereunder, purchaser will advise Seller's Agent in writing, addressed to his/her office in 33 above, of any objections or exceptions which may be returned by the title company or anyone else examining title to such premises, and if required within which to remove the same, then in such event, the seller shall have reasonable adjournments of closing of title from time to time not to exceed thirty (30) days within which to clear such objections, and all adjustments shall be made as of the date of closing.

## LEAD PAINT WARNING

37. These premises are residential premises built prior to 1978, and, as such, said property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Therefore, a risk assessment or inspection for possible lead-based paint hazards is recommended. Upon information and belief Seller is not aware of any known lead-based paint and/or lead based hazards in the premises being sold. The seller does not have any knowledge of, or available any lists of any records or reports pertaining to lead-based paint and/or lead-based paint hazards in the premises being sold.

38. The Seller shall not be liable or bound by any verbal or written statements, representations, real estate broker "set ups" or information pertaining to the Premises furnished by any real estate broker, agent, employee, officer, servant, or any other person, unless the same are specifically forth herein. All oral or written prior statements, representations, or promises, if any, and all prior negotiations and agreements are superseded by this Agreement and merged herein.

39. Seller's attorney shall undertake or cause to be undertaken the filing of I.R.S. Form 1099 or it's equivalent in accordance with the Amendment to Section 6045 of the Internal Revenue Code, as promulgated by the Tax Reform Act of 1986, which requires the reporting of certain information to the Internal Revenue Service regarding all real estate transactions closing after December 31, 1986.

40. If either party's closing attorney attends a scheduled closing and the closing does not occur due to the fault of the other side, then the party at fault shall pay the non-faulting party's attorney attendance fee of $ 500.00.

41. If the closing takes place outside of the five boroughs of New York City, purchaser shall pay seller's attorney a travel fee of $500.

42. Seller warrants and represents that he has no knowledge of any claim by any present or former tenant of the premises against Seller or the premises, whether filed or not. This warranty and representation shall survive the closing.

43. The premises will be delivered vacant. There are no security deposits and seller is not aware of any tenancies, parties in possession or persons with right of occupancy of said premises. This provision shall survive the closing. Seller's attorney shall provide Buyer's attorney, within seven days of the execution of this contract, copies of any and all correspondence in Seller's possession or control relating to any persons who were tenants of the building within the last three years, including housing registration statements.

44. Seller is not aware of any debts or service contracts, cable service, etc. which run with the premises or which might become a lien against said premises.


THEODORE E. JOHNSON

Natalia Wolan, Purchaser

(h) This contract is intended for the exclusive benefit of the parties hereto and, except as otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or be enforceable by, any other person or entity.

Continued on Rider attached hereto. *Delete if inapplicable.*

(i) If applicable, the complete and fully executed disclosure of information on lead-based paint and/or lead-based paint hazards is attached hereto and made a part hereof.

In Witness Whereof, this contract has been duly executed by the parties hereto.

_____
Theodore Johnson                                    *Seller*

_____
*Natalia Wolan*
Natalia Wolan                                    *Purchaser*

_____
                                    *Seller*

_____
                                    *Purchaser*

Attorney for Seller:
Cherry & Marshburn

Address:
305 Broadway, Suite 303, NYC

Tel.: 212-267-7007            Fax: 212-267-4445

Attorney for Purchaser:
William H. Schaap, Esq.

Address:
143 West 4th Street, NY, NY 10012

Tel.:

Fax:212-005-8600

Receipt of the Downpayment is acknowledged and the undersigned agrees to act in accordance with the provisions of paragraph 6 above.

_____
Cherry & Marshburn                                    *Escrowee*

## NOTES ON MORTGAGE COMMITMENT CONTINGENCY CLAUSE
### for
### RESIDENTIAL CONTRACT OF SALE

1. WARNING: the mortgage commitment contingency clause for the Residential Contract of Sale is a bar association form that attempts to provide a mechanism that makes the rights and obligations of the parties clear in sales of residences in ordinary circumstances. It should be reviewed carefully by Seller and Purchaser and their attorneys in each and every transaction to make sure that all the provisions are appropriate for that transaction. Negotiated modifications should be made whenever necessary.

2. Under the clause, the obligation of Purchaser to purchase under the contract of sale is contingent on Purchaser's obtaining a mortgage commitment letter from an Institutional Lender within the number of days specified for the amount specified. This refers to calendar days. Seller's attorney should state his/her calculation of the Commitment Date in the letter delivering the executed contract to Purchaser's attorney, to prevent confusion later. Purchaser should promptly confirm or correct that date. In applying for a loan, Purchaser should inform its lender of the scheduled date of closing in the contract and request that the expiration date of the commitment occur after the scheduled date of closing. Purchaser must comply with deadlines and pursue the application in good faith. The commitment contingency is satisfied by issuance of a commitment in the amount specified on or before the Commitment Date, unless the commitment is conditioned on approval of an appraisal. If the commitment is conditioned on approval of an appraisal and such approval does not occur prior to the Commitment Date, Purchaser should either cancel the contract or obtain an extension of the Commitment Date. If the commitment is later withdrawn or not honored, Purchaser runs the risk of being in default under the contract of sale with Seller.

3. If there are loan terms and conditions that are required or would not be acceptable to Purchaser, such as the interest rate, term of the loan, points, fees or a condition requiring sale of the current home, those terms and conditions should be specified in a rider.

4. This clause assumes that initial review and approval of Purchaser's credit will occur before the commitment letter is issued. Purchaser should confirm with the lender that this is the case before applying for the commitment.

5. If, as has been common, the commitment letter itself is conditioned on sale of Purchaser's home or payment of any outstanding

debt or no material adverse change in Purchaser's financial condition, such a commitment will satisfy the contract contingency nonetheless, and Purchaser will take the risk of fulfilling those commitment conditions, including forfeiture of the downpayment if Purchaser defaults on its obligation to close. Under New York case law, a defaulting purchaser may not recover any part of the downpayment, and Seller does not have to prove any damages. If Purchaser is not willing to take that risk, the clause must be modified accordingly.

6. Purchaser may submit an application to a registered mortgage broker instead of applying directly to an Institutional Lender.

7. This clause allows Seller to cancel if a commitment is not accepted by Purchaser by the Commitment Date, unless Purchaser timely supplies a copy of the commitment, to allow Seller the option to avoid having to wait until the scheduled date of closing to see if Purchaser will be able to close. Seller may prefer to cancel rather than to wait and settle for forfeiture of the downpayment if Purchaser defaults. Because of Seller's right to cancel, Purchaser may not waive this contingency clause. This clause means that Purchaser is subject to cancellation by Seller even if Purchaser is willing to risk that he/she will obtain the Commitment after the Commitment Date. Some Purchasers may not want to be subject to such cancellation by Seller.

8. Purchaser may want to add to paragraph 22 that Purchaser's reimbursement should include non-refundable financing and inspection expenses of Purchaser, which should be refunded by Seller if Seller willfully defaults under the contract of sale [alternative: if Seller is unable to transfer title under the contract of sale].

9-25-00

Joint Committee on the Mortgage Contingency Clause:

Real Property Section of the New York State Bar Association

Real Property Law Committee of the Association of the Bar of the City of New York

Real Property Committee of the New York County Lawyers Association

6

*"Fraud" Theodore F. Johnson Did Not authorized this Commitment*

# Fidelity National Title
### INSURANCE COMPANY

---

**Commitment for Title Insurance**

*A Stock Company*

## COMMITMENT FOR TITLE INSURANCE

*Fidelity National Title Insurance Company, a New York corporation, herein called the Company, for valuable consideration, hereby commits to issue its policy or policies of title insurance, as identified in Schedule A, in favor of the Proposed Insured named in Schedule A, as owner or mortgagee of the estate or interest covered hereby in the land described or referred to in Schedule A, upon payment of the premiums and charges therefor; all subject to the provisions of Schedules A and B and to the Conditions and Stipulations hereof.*

*This Commitment shall be effective only when the identity of the Proposed Insured and the amount of the policy or policies committed for have been inserted in Schedule A hereof by the Company, either at the time of the issuance of this Commitment or by subsequent endorsement.*

*This Commitment is preliminary to the issuance of such policy or policies of title insurance and all liability and obligation hereunder shall cease and terminate within six (6) months after the effective date hereof or when the policy or policies committed for shall issue, whichever first occurs, provided that the failure to issue such policy or policies is not the fault of the Company.*

*IN WITNESS WHEREOF, Fidelity National Title Insurance Company has caused its corporate name and seal to be hereunto affixed and these presents to be signed in facsimile under authority of its by-laws on the date shown in Schedule A.*

### FIDELITY NATIONAL TITLE INSURANCE COMPANY



SEAL

By: _____

President

ATTEST _____

Secretary

Countersigned: _____

Authorized Signature

# Fidelity National Title Insurance Company

TITLE NO.: 02-3706-6121-NYM

February 9, 2008

PREPARED FOR: William Schaap, Esq.
143 West 4th Street
New York, NY 10012

PREMISES: 121 West 118th Street
New York, NY

COUNTY: New York

LOCALITY: City of New York

DISTRICT(S):          SECTION(S): 7          BLOCK(S): 1903          LOT(S): 20

## SCHEDULE A

1. EFFECTIVE 9:00AM January 24, 2006     REDATED 9:00 AM              CLOSER'S SIGNATURE:

2. POLICY OR POLICIES TO BE ISSUED:

   a.  _X_  ALTA Owner 1992 (With NY Endorsement)
          Proposed Insured: Natalie Wolan                   Amount of Insurance   $725,000.00

   b. _____ ALTA Loan 1992 (With NY Endorsement)
          Proposed Insured:                                 Amount of Insurance

   c. _____ ALTA
          Proposed Insured:                                 Amount of Insurance

3. THE ESTATE OF INTEREST IN THE LAND DESCRIBED OR REFERRED TO IN THIS COMMITMENT AND COVERED HEREIN
   IS:

### FEE SIMPLE

4. TITLE TO THE ESTATE OR INTEREST IN SAID LAND DESCRIBED OR REFERRED TO IN THIS COMMITMENT IS AT THE
   EFFECTIVE DATE HEREOF VESTED IN: [Amended 2/9/06]

                                    Theodore F. Johnson
   Source of Title:

   Deed made by Ralph Johnson dated January 23, 1986, recorded January 27, 1986 in Reel 1013 Page 995.

5. THE LAND REFERRED TO IN THIS COMMITMENT IS DESCRIBED AS FOLLOWS:

                        See Schedule A (Description), following.

   Ralph Johnson Donot own
   Said Property.

SCHEDULE A

INDEX NO.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
THEODORE F. JOHNSON

                    Plaintiff Pro Se

        -against-

DEBRA A. JAMES, a/k/a JUDGE DEBRA
A.  JAMES, NATALIA SWAN, a/k/a  NATALIA
WOLAN, ALTERMAN and  BOOP, LLP, WILLIAM
SCHAAP, ESQ., ROBERT S. SIKORSKI, FIDELITY
NATIONAL TITLE INSURANCE COMPANY,
YOLANDA CHANG, Broker, GWENERVA
DARLING CHERRY and H.P.D. NEW YORK CITY
DEPARTMENT OF FINANCE, ET AL

                    Defendants
-------------------------------------------------------

            COMPLAINT
        JURY TRIAL DEMANDED
-------------------------------------------------------

        THEODORE F. JOHNSON
        Plaintiff  Pro Se
        205 Brown Avenue
        Hempstead, NY 11550
        (516) 292-0113

2009 JAN 17  AM II:51

N Y N Y 10013
32 COURT ST.
ALTERMAN & BOOP, P.C.

6